## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

CONSERVATION LAW FOUNDATION, INC.   )
   )
Plaintiff,    )
   )
v.    )     Case No. 16-cv-143-M-PAS
   )
J & S SCRAP METAL & RECYCLING, INC.    )
   )
Defendant.    )

## CONSENT DECREE

WHEREAS, Plaintiff Conservation Law Foundation, Inc. ("CLF") filed this action on March 23, 2016 against Defendant J & S Scrap Metal & Recycling, Inc. ("J & S Scrap"), alleging violations of the Clean Water Act, 33 U.S.C. §§ 1251 *et seq.*, and seeking declaratory and injunctive relief, civil penalties, and attorneys fees and costs;

WHEREAS, J & S Scrap owns and operates a scrap metal recycling facility located at 36 Starr St, Johnston, RI 02919 (the "Facility");

WHEREAS, the Facility discharges stormwater to an unnamed tributary to Simmons Brook;

WHEREAS, CLF is a regional, nonprofit environmental organization;

WHEREAS, CLF has alleged, in its complaint (the "Complaint") and in a letter (the "Notice Letter") dated January 21, 2016, sent to J & S Scrap and others, that J & S Scrap has violated and as of the date of filing continued to violate Section 505 of the Federal Clean Water Act ("CWA" or "Act"), 33 U.S.C. § 1365(a);

WHEREAS, J & S Scrap obtained coverage under the Multi-Sector General Permit for Stormwater Discharge Associated with Industrial Activity ("MSGP") for discharges of stormwater associated with industrial activity from the Rhode Island Department of Environmental Management ("RIDEM") on March 24, 2016; and

WHEREAS, CLF and J & S Scrap (collectively, "the Parties" or individually "Party") agree that resolution of this matter without further litigation is in the best interest of the Parties and the public, and that entry of this Decree is the most appropriate means of resolving this action.

NOW, THEREFORE, without the trial of any issue of fact or law, without the admission by J & S Scrap of any of the facts or violations alleged in the Complaint, upon consent of the Parties, and upon consideration of the mutual promises contained herein,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

## I.    JURISDICTION AND VENUE

1.  Jurisdiction over this action is conferred by 28 U.S.C. § 1331 (federal question) and 33 U.S.C. § 1365(a) (Clean Water Act jurisdiction).    An actual, justiciable controversy exists between Plaintiff and Defendant. The requested relief is proper under 28 U.S.C. § 2201, 28 U.S.C. § 2202 and 33 U.S.C. § 1365(a).

2.  Venue is properly vested in this Court pursuant to 33 U.S.C. § 1365(c)(1), because the events giving rise to this action occurred at the Facility, and in the Narragansett watershed, which are located within this judicial district.

## II.    COMPLIANCE PROGRAM

3.  J & S Scrap will comply with the MSGP in all respects.  The MSGP, as it may be updated from time to time, is incorporated into this Decree by reference.

## III.    MONITORING PROGRAM

4.   J & S Scrap will sample its stormwater discharges for pollutants identified in the MSGP for the Sector N (i.e. Total Suspended Solids, Aluminum, Copper, Iron, and Lead) four (4) times during the first twelve (12) months after the Effective Date of this Decree. These samples must be obtained pursuant to the requirements of Part IV(A) of the MSGP and include, at a minimum, all areas, as defined by 40 C.F.R. 122.26(b)(14), where waste is generated, received, stored, treated, or disposed or and that are exposed to either precipitation or stormwater runoff.  J & S Scrap may report this sampling as part of the stormwater monitoring required by the permit.  J & S Scrap will send a copy of each sampling result to CLF no later than three (3) days after receipt.

5.  After completing the sampling required by paragraph 4 above, J & S Scrap will commence monitoring two (2) times per year at all outfalls discharging industrial stormwater from the Facility for pollutants identified in the MSGP for Sector N (i.e. Total Suspended Solids, Aluminum, Copper, Iron, and Lead).  The semiannual monitoring must be performed pursuant to the requirements of Part VI and Appendix B of the MSGP. J & S Scrap will send a copy of each inspection and/or sampling result to CLF no later than three (3) days after receipt.

6. J & S Scrap will also comply with all other inspection and monitoring requirements of the MSGP including, but not limited to, those of Part IV.  J & S Scrap will send a copy of each inspection and/or sampling result to CLF no later than three (3) days after receipt.

7.  J & S Scrap may take additional samples of its stormwater discharges.  If it does so, J & S Scrap may send a copy of each such inspection and/or sampling result to CLF no later than three (3) days after receipt. Results of additional samples shall not form the

basis for or result in additional SEP payments and shall not constitute a violation of this Decree.

8.  During the first year after the Effective Date of this Decree, J & S Scrap shall implement control measures as necessary to meet the benchmark levels for Total Suspended Solids, Aluminum, Copper, Iron, and Lead, pursuant to MSGP Part VIII.  If, after the end of one year from the Effective Date of this Decree, J & S Scrap's semiannual monitoring results submitted to Rhode Island Department of Environmental Management for any parameter exceed MSGP Part VIII.N benchmark levels, J & S Scrap agrees to pay stipulated additional Supplemental Environmental Project payments as set forth in Paragraph 12 of this Decree, provided however that if in accordance with MSGP § VI.B.1(d) J & S Scrap makes a determination that no further pollutant reductions are technologically available and economically practicable and achievable in light of best industry practice, and if RIDEM accepts such a determination from J & S Scrap, then J & S Scrap may conduct monitoring once per year in accordance with MSGP § VI.B.1(d) and shall not be required to make additional Supplemental Environmental Project payments under Paragraph 12 of this Decree based on the results of such monitoring.

9.  During the 5-year life of the Decree, CLF, through representatives, may conduct up to one (1) yearly site inspection at the Facility.  The site inspection shall occur during normal business hours and upon forty-eight (48) hours prior notice.  During the site inspection, CLF representatives may collect representative stormwater samples from the discharge location or locations identified in the most recent Storm Water Management Plan approved by RIDEM for the Facility and pursuant to MSGP Part VI and may take photos at the Facility. Any such samples shall be split samples with one of the split samples remaining in the possession of J & S Scrap. Any result of CLF's inspections shall not directly result in additional SEP payments.

10. During the 5-year life of the Decree, J & S Scrap shall copy CLF on all documents related to water quality or environmental compliance regarding the Facility submitted to any government agency including, but not limited to, the EPA, RIDEM, and the Town of Johnston.  Such documents shall be provided to CLF concurrently as they are sent to the agencies and/or municipality.

## IV.    SUPPLEMENTAL ENVIRONMENTAL PROJECT

11.  J & S Scrap shall pay a total of $20,000 to the Pawtuxet River Authority, 8 Hope Furnace Road, Hope, RI 02891, for a Supplemental Environmental Project ("SEP") for environmental restoration of or other benefit to the Pawtuxet River watershed.  J & S Scrap shall make the aforementioned SEP payments in five (5) annual payments in the amount of $4,000.00 per payment beginning ninety (90) days from the Effective Date of this Decree.  J & S Scrap shall notify CLF in writing when the payment is made and provide a copy of the check.  J & S is allowed to provide in-kind services in lieu of cash SEP payments after first obtaining the written consent of the Pawtuxet River Authority. All J & S in-kind services will be documented via invoice and forwarded to CLF.

12. For each exceedance of the MSGP benchmarks described in Paragraph 8 of the Decree, above, J & S Scrap will make an additional SEP payment to the Pawtuxet River Authority in the amount of five hundred dollars ($500) for environmental restoration of or other benefit to the Pawtuxet River watershed. Payment of each such additional amount shall be due thirty (30) days following each exceedance. J & S Scrap shall notify CLF in writing concurrently each time a payment is made and provide a copy of each check. SEP payments pursuant to Sections 12 and 13 of this Decree shall not exceed $5,000.00 per any twelve (12)-month period commencing from the Effective Date of this Decree.

13. For each missed deadline included in this Decree, including but not limited to failures to timely conduct semiannual benchmark monitoring and inspections pursuant to Parts IV and VI of the MSGP, J & S Scrap will make an additional SEP payment to the Pawtuxet River Authority in the amount of five hundred dollars ($500) for environmental restoration of or other benefit to the Pawtuxet River watershed. Payment of each such additional amount shall be due thirty (30) days following each missed deadline. J & S Scrap shall notify CLF in writing concurrently each time a payment is made and provide a copy of each check. SEP payments pursuant to Sections 12 and 13 of this Decree shall not exceed $5,000.00 per any twelve (12)-month period commencing from the Effective Date of this Decree.

14. None of the SEP payments shall be dispersed to CLF.

## V.   LIQUIDATED ATTORNEY FEES AND COSTS

15. J & S Scrap shall pay to CLF a sum of $25,000 as full and complete satisfaction of CLF's claim for attorneys' fees and costs incurred in this matter, in the following manner: J & S shall remit to CLF five (5) annual payments in the amount of $5,000.00 per payment beginning ninety (90) days from the Effective Date of this Decree.

16. In the event that any payment owed by J & S Scrap under the Decree is not made within thirty (30) days of the due date, J & S Scrap shall pay to CLF liquidated attorney fees, which shall be calculated at a rate of 12% annum (i.e., simple interest not compound), after 180 days, the rate will increase to 18% annum. In the event that any payment is overdue by 360 days, the underlying payment that is overdue will double.

## VI.   EFFECT OF DECREE

17. CLF covenants not to sue J & S Scrap (and its parent corporations, subsidiaries, officers, directors, shareholders, employees, agents, and consultants) for any and all claims, causes of action, or liability under Section 505 of the Clean Water Act, 33 U.S.C. § 1365 for damages, penalties, fines, injunctive relief, or any other claim or relief (i) relating to or resulting from noncompliance with the MSGP at the Facility occurring prior to the date the Court enters this Decree or (ii) for any past violations alleged in the Complaint.

18. J & S Scrap releases and discharges CLF, its representatives, assigns, agents, employees, officers, and attorneys, including those who have held positions in the past from any and all claims, liability, demands, penalties, costs, and causes of action of every nature which concern or are connected with this action.

19. Neither this Decree, nor terms thereof, nor performance of the terms thereunder by J & S Scrap shall constitute or be construed as an admission or acknowledgment by J & S Scrap of the factual or legal assertions contained in this Decree or in CLF's Complaint, and J & S Scrap retains the right to controvert in any subsequent proceedings, other than proceedings for the purpose of implementing or enforcing this Decree, the validity of the facts or determinations contained in this Decree or the Complaint. Neither this Decree, nor terms thereof, nor performance of the terms thereunder, shall constitute or be construed as an admission or acknowledgment by J & S Scrap of any liability, or an admission of violation of any law, by J & S Scrap or by its officers, directors, employees, agents, successors, or assigns.

20. CLF does not, by consent to the Decree, warrant or aver in any manner that J & S Scrap's compliance with this Decree will constitute or result in compliance with federal or state law or regulation. Nothing in this Decree shall be construed to affect or limit in any way the obligation of J & S Scrap to comply with all federal, state, and local laws and regulations governing any activity required by this Decree.

## VII.    REVIEW AND TERM OF DECREE

21. The Parties recognize that, pursuant to 33 U.S.C. § 1365(c)(3), this Decree cannot be entered until forty-five (45) days after the receipt of a copy of the proposed Decree by the United States Attorney General and the EPA. Therefore, upon signing of this decree by the Parties, CLF shall serve copies of this Decree upon the EPA Administrator, the Regional EPA Administrator, and the Attorney General for review, as required by 40 C.F.R. § 135.5.

22. Upon the expiration of the forty-five-day review period provided by 33 U.S.C. § 1365(c)(3), the Parties will jointly move the Court for entry of this Decree. This Decree shall take effect on the date it is entered by this Court and shall terminate five (5) years from when it is entered by the Court. If for any reason the Court should decline to approve this Decree in the form presented, the Parties agree to continue negotiations in good faith in an attempt to cure any objection raised by the Court to entry of this Decree.

## VIII.    MODIFICATION AND ENFORCEMENT OF DECREE

23. This Decree may be modified only upon written consent of the Parties and the approval of the Court.

24. This Court shall retain jurisdiction over this matter and allow this action to be reopened for the purpose of enabling the Parties to this Decree to apply to the Court for any further order that may be necessary to construe, carry out, enforce compliance and/or resolve any dispute regarding the terms or conditions of this Decree.

25. Before a party to this Decree files any motion to enforce the terms of this Decree, that party shall notify the other party in accordance with the terms of paragraph 34 of this Decree, after which the parties shall meet and confer for a period of not less than thirty days in a good faith effort to reach a resolution without the involvement of this Court.

## IX.    MISCELLANEOUS PROVISIONS

26. Force Majeure. For purposes of this Decree, a "Force Majeure event" is defined as any event arising from causes beyond the control of Defendant, including its contractors and subcontractors, that delays or prevents the timely performance of any obligation under this Decree, except for obligations as provided in Paragraphs 11, 15, and 16 of this Decree, notwithstanding Defendant's best efforts to avoid the delay. The deadline for the responsibility to perform any action under this Decree may be extended for up to the number of days of nonperformance caused by the Force Majeure event, provided that Defendant complies with the notice requirements of this paragraph. Examples of events which may constitute Force Majeure events include severe weather events, natural disasters, and national, state or regional emergencies. Examples of events that are not Force Majeure events include, but are not limited to, normal inclement weather, unanticipated or increased costs or expenses of work, Defendant's financial difficulty in performing such work and acts or omissions attributable to Defendant's contractors or representatives.

If any event occurs which may delay or prevent the performance of any obligation under this Decree, caused by a Force Majeure event, Defendant shall notify CLF, at the address specified in Paragraph 34 below, within three (3) business days after Defendant first knows, or should know, that the event might cause a delay. This written notice to CLF shall include, without limitation: (i) an explanation of the causes of any actual or expected delay or noncompliance; (ii) the anticipated duration of delay; (iii) the measures taken and to be taken by Defendant to prevent or minimize the delay or nonperformance; (iv) a proposed schedule for the implementation of such measures; and (v) a statement as to whether in the opinion of Defendant the Facility can continue to operate in a manner which will not violate this Decree.

If CLF agrees that a delay or anticipated delay in performance is attributable to Force Majeure, the time for performance of the obligations under this Decree that are affected by the Force Majeure event shall be extended for the period of time reasonably necessary to allow performance of the obligation to the extent the delay was caused by a Force Majeure event.

27. Except for the payments enumerated in Sections IV and V of this Decree, the remaining terms of this Decree shall not remain in effect if J & S Scrap relocates the Facility to a different location. The term relocate shall be effective when all waste generated, received, stored, treated, or disposed is not exposed to either precipitation or stormwater runoff and the site no longer generates "stormwater associated with industrial activity" as that term is defined at 40 C.F.R. 122.26(b)(14).

28. Sections I, IV, V, VI, VII, and VIII of this Decree shall remain in effect if J & S Scrap ceases to be the operator of the Facility, regardless of whether the Facility continues to operate or not.

29. Except for the payments enumerated in Section V. of this Decree, the remaining terms of this Decree shall not remain in effect if J & S Scrap ceases to be the owner of, and ceases to operate, the Facility, regardless of whether the Facility continues to operate or not.

30. All payments pursuant to this Decree shall be made in form of a business check.

31. Each person signing this Decree represents and warrants that s/he has been duly authorized to enter into this Decree by the Party on whose behalf it is indicated that the person is signing.

32. Entire Agreement. This Decree constitutes the entire agreement among the Parties concerning the subject matter hereof and supersedes all previous correspondence, communications, agreements and understandings, whether oral or written, among the Parties.

33. Full Settlement. This Consent Decree constitutes a full and final satisfaction of this matter, including without limitation, anything in Plaintiff's Notice Letter or Complaint.

34. Notices. Any notice, demand, copies of documents and other communications required to be made under the provisions of this Decree (collectively, "Notices") by any Party hereto shall be effective only if in writing and (a) emailed, (b) personally served, (c) mailed by United States registered or certified mail, return receipt requested, postage prepaid, or (d) sent by a nationally recognized courier service (i.e., Federal Express) for next-day delivery, to be confirmed in writing by such courier. Notices shall be directed to the Parties at their respective addresses set forth below. Notices given in the foregoing manner shall be deemed given when (a) sent via email, (b) actually received or refused by the party to whom sent if delivered by courier, or (c) if mailed, on the day of actual delivery as shown by the addressee's registered or certified mail receipt or at the expiration of three (3) business days after the date of mailing, whichever first occurs.

Notices for Plaintiff shall be sent to:

Max Greene, Esq.
Conservation Law Foundation
55 Dorrance Street
Providence, RI 02903
mgreene@clf.org
Attorney for CLF

Notice for J & S Scrap shall be sent to:

Christopher D'Ovidio, Esq.
469 Centerville Road, Suite 206
Warwick, RI 02886
chris@dovidiolaw.com
Attorney for J & S

Each Party shall promptly notify the other Party of any change in the above-listed contact information by using the procedures set forth on this paragraph.

35. Successors and Assigns.   This Decree shall be binding upon and inure to the benefit of the Parties and their respective representatives, heirs, executors, administrators, successors, officers, directors, agents, attorneys, employees and permitted assigns.

36. Interpretation.  The provisions contained herein shall not be construed in favor of or against any Party because that party or its counsel drafted this Decree, but shall be construed as if all Parties prepared this Decree, and any rules of construction to the contrary are hereby specifically waived.  The terms of this Decree were negotiated at arm's length by the Parties hereto.

37. Headings. The section and paragraph headings contained in this Decree are for reference purposes only and shall not affect in any way the meaning or interpretation of this Decree.

38. Counterparts.  Facsimile, electronic and scanned signatures shall be deemed to be originals for all purposes.  Copies of the original Agreement, whether transmitted by facsimile or other means, shall be effective.  This Agreement may be signed in counterparts.

39. Severability.  In the event that any of the provisions of this Decree are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

CONSERVATION LAW FOUNDATION, INC.

By: _____ Date:_____

Christopher M. Kilian, VP and Director
Conservation Law Foundation
15 East State Street, Suite 4
Montpelier, VT 05602
(802) 223-5992 x4011
ckilian@clf.org

J & S SCRAP METAL & RECYCLING, INC.

By: _____ Date:_____

Jeff Cadieux, President
J & S Scrap Metal & Recycling, Inc.
36 Starr Street
Johnston, RI 02919

ENTERED and DATED this _____ day of ____July____ , 2017

_____
Honorable John J. McConnell, Jr.
United States District Judge

CONSERVATION LAW FOUNDATION, INC.

By: _____    Date:_____
       Christopher M. Kilian, VP and Director
       Conservation Law Foundation
       15 East State Street, Suite 4
       Montpelier, VT 05602
       (802) 223-5992 x4011
       ckilian@clf.org

J & S SCRAP METAL & RECYCLING, INC.

By: _____    Date: 4/21/17
       Jeff Cadieux, President
       J & S Scrap Metal & Recycling, Inc.
       36 Starr Street
       Johnston, RI 02919

ENTERED and DATED this ___ day of _____, 2017

_____
Honorable John J. McConnell, Jr.
United States District Judge

CONSERVATION LAW FOUNDATION, INC.

By: _____   Date: 5/16/17
        Christopher M. Kilian, VP and Director
        Conservation Law Foundation
        15 East State Street, Suite 4
        Montpelier, VT 05602
        (802) 223-5992 x4011
        ckilian@clf.org

J & S SCRAP METAL & RECYCLING, INC.

By: _____   Date:_____
        Jeff Cadieux, President
        J & S Scrap Metal & Recycling, Inc.
        36 Starr Street
        Johnston, RI 02919


ENTERED and DATED this ____ day of _____, 2017


                                        _____
                                        Honorable John J. McConnell, Jr.
                                        United States District Judge